IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBIN ROBERSON, | ) |
|     Plaintiff, | ) ) ) |
| v. | )    Case No. CIV-25-262-D |
| STATE FARM FIRE AND CASUALTY COMPANY; and GREG AYRES, | ) ) ) ) |
|     Defendants. | ) ) |

**ORDER**

Before the Court is Plaintiff's Motion to Remand [Doc. No. 5]. Defendant State Farm Fire and Casualty Company filed a Response [Doc. No. 9]. The matter is fully briefed and at issue.

**BACKGROUND**

Plaintiff filed this action in the District Court of Oklahoma County, Case No. CJ-2024-3950. In her petition [Doc. No. 1-2], Plaintiff alleges that a series of earthquakes caused damage to her property. Plaintiff filed a claim against her home insurance policy, issued by State Farm, which was denied. Thereafter, Plaintiff brought claims against State Farm and her insurance agent, Greg Ayres.[1]

For Plaintiff's claims against Ayres, she alleges in her petition:

---

[1] Plaintiff's petition also included claims related to a car accident, for which Plaintiff filed a claim against her auto policy with State Farm Mutual Automobile Insurance Company. Plaintiff also named as a defendant the other driver involved in the collision, Elizabeth Rhodes. On December 3, 2024, the state court severed the auto-related claims from this action [Doc. No. 1-32, at 2].

1

> In April 2021, Plaintiff obtained the insurance on the property. Ayres was the agent responsible for selling the insurance policy.
>
> Ayres advised Plaintiff to obtain an earthquake endorsement, representing that State Farm would pay damages arising from an earthquake, restoring it to pre-loss condition, if such an endorsement were purchased. However, the endorsement provided by State Farm and obtained by Ayres did not, as reflected in State Farm's determination, provide such coverage.
>
> At no time did Ayres advise that State Farm would deny coverage based on purported settling (i.e., a preexisting condition) or that insurance companies had overwhelmingly denied earthquake claims in Oklahoma. Ayres did not disclose that State Farm would deny Plaintiff's claim based solely on the earth movement exclusion without any consideration for her earthquake endorsement. He did not advise Plaintiff that Farmers had paid $25,000,000 to the State of Oklahoma relating to earthquake insurance claims just two months prior to the issuance of Plaintiff's policy. Nor did Ayres advise that State Farm had been directed to perform an inspection of the property prior to inception of coverage to determine the condition of the property or that State Farm failed to do so. … Ayres' employee/spouse also advised Plaintiff of a 'three-strike rule,' which had never been disclosed, which would prevent, and has prevented, Plaintiff from obtaining preferred coverage from State Farm, or, as a result of the open earthquake claim, insurance from any alternative carriers.
>
> Based on Ayres['] representations and omissions, Plaintiff obtained and paid premiums for illusory earthquake coverage.

[Doc. No. 1-2, at ¶¶ 22-25] (omitting auto-related allegation).

The parties litigated this case in state court for more than 8 months before State Farm filed its Notice of Removal [Doc. No. 1]. Prior to removal, Ayres filed a motion for partial summary judgment, seeking determinations that (1) Ayres had no duty to ensure a

pre-coverage inspection of Plaintiff's property; and (2) Plaintiff does not have a claim against Ayres based on "illusory coverage." [Doc. No. 1-24, at 1].

In responding to Ayres' motion for partial summary judgment, Plaintiff appeared to concede that Ayres did not have a duty to ensure a pre-coverage inspection of Plaintiff's property [Doc. No. 1-27, at 2], and Plaintiff noted that she "ha[d] not made a claim against Ayres for 'illusory coverage.'" *Id.* at 3. Rather, Plaintiff maintained that her "claims are focused on what Ayres misrepresented or failed to disclose to Plaintiff when he convinced her to purchase earthquake coverage." *Id.* at 2.

The state court granted Ayres' motion for partial summary judgment on both issues [Doc. No. 1-32]. Thereafter, because "it became unclear what, if anything, Plaintiff still purported to maintain against Ayres," Ayres filed a motion for entry of judgment [Doc. No. 1-33], predicated on the state court's granting of Ayres' motion for partial summary judgment. In the alternative, Ayres also filed a motion to compel [Doc. No. 1-34], requesting that Plaintiff be compelled to supplement certain answers to interrogatories, to include Interrogatory 13, asking Plaintiff to "identify all communications between [Plaintiff] and [Ayres] or State Farm relating to the Earthquake Endorsement." *Id.* at 3.

Plaintiff responded in two key ways, each of which will be discussed in greater detail in the body of this Order. First, in response to Ayres' motion to compel, Plaintiff supplemented her answer to Interrogatory 13, identifying three e-mail chains between Plaintiff and Ayres' staff regarding the earthquake endorsement. As noted by State Farm, these e-mails occurred after the alleged damage had already occurred. Next, in responding to Ayres' motion for entry of judgment, Plaintiff executed a sworn declaration, omitting

3

for the first time her only allegation of an affirmative, pre-procurement representation by Ayres.

Within 30 days of State Farm's receipt of Plaintiff's supplemental discovery responses and sworn declaration, State Farm removed the action to this Court based on the alleged fraudulent joinder of Ayres. Presently before the Court is Plaintiff's motion to remand.

## STANDARD OF DECISION

Subject matter jurisdiction over this case turns on the issue of fraudulent joinder. "To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (internal quotation omitted). The Court will address only the second basis.[2] As the removing party, State Farm must establish federal jurisdiction exists. *See McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008).

"Removal statutes are to be strictly construed, and all doubts are to be resolved against removal." *Fajen v. Found. Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir. 1982) (internal citation omitted). To satisfy the "heavy burden on the party asserting

---

[2] Although State Farm argues in its response that Plaintiff committed actual fraud in the pleading of jurisdictional facts, State Farm did not include actual fraud as a basis for removal in its Notice of Removal [Doc. No. 1], nor has State Farm sought leave to amend the same. *See Hanson v. Dollar Gen.*, No. CIV-21-362-D, 2021 WL 2026452, at *3 (W.D. Okla. May 20, 2021) (quoting *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 151-52 (1914)) ("It is well settled that a removal pleading must contain a sufficient statement of the grounds for removal so that 'the opposing party may take issue, by a motion to remand, with what is alleged in the petition.'").

4

fraudulent joinder," State Farm must show that there is no possibility that Plaintiff would be able to establish a cause of action against Ayres in state court. *See Montano v. Allstate Indem.*, No. 99-2225, 2000 WL 525592, at *1 (10th Cir. Apr. 14, 2000) (unpublished)[3] (quotations and citation omitted); *Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. June 4, 2013) (unpublished) (citation omitted) ("[T]he removing party must show that the plaintiff has 'no cause of action' against the fraudulently joined defendant.").

"[U]pon specific allegations of fraudulent joinder, the court may pierce the pleadings, … consider the entire record, and determine the basis of joinder by any means available." *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) (citations omitted); *see also Smoot v. Chicago, Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 881-82 (10th Cir. 1967).

The nonliability of a defendant alleged to have been fraudulently joined must be "established with complete certainty." *Smoot*, 378 F.2d at 882; *Dodd*, 329 F.2d at 85. However, the heavy burden placed upon State Farm to prove fraudulent joinder does not mean this Court must "blindly accept" Plaintiff's allegations, "no matter how incredible or how contrary to the overwhelming weight of the evidence." *In re Diet Drugs Products Liab. Litig.*, 352 F. Supp. 2d 533, 537 (E.D. Pa. 2004); *In re Train Derailment Near Amite, La.*, No. Civ.A. MDL 1531, 2003 WL 21715000, at *2 (E.D. La. July 18, 2003) ("Although [defendant] bears a heavy burden of proof on the fraudulent joinder issue, [plaintiffs]

---

[3] Unpublished opinions are cited pursuant to FED. R. APP. P. 32.1(a) and 10th Cir. R. 32.1(A).

cannot rely on conclusory allegations and speculation in light of the evidence offered by [defendant]").

## DISCUSSION

### I. Fraudulent Joinder – Inability to State a Claim Against Ayres

Although Plaintiff's state-court petition does not specify her claims against Ayres, the Court will construe Plaintiff's petition as including claims of negligent procurement and negligent misrepresentation/constructive fraud against Ayres. Thus, to succeed in establishing fraudulent joinder, State Farm must show Plaintiff's inability to establish each cause of action against Ayres in state court.

#### a. Negligent Procurement

Under Oklahoma law, "[a]n agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance and an agent is liable to the insured if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss." *Kutz v. State Farm Fire & Cas. Co.*, 2008 OK CIV APP 60, ¶ 16, 189 P.3d 740, 744-45 (citation omitted). To that end, agents must "offer coverage mandated by law and coverage for needs that are disclosed by the insureds…." *Rotan v. Farmers Ins. Grp. of Companies, Inc.*, 2004 OK CIV APP 11, ¶ 3, 83 P.3d 894, 895.

Upon consideration of the parties' submissions, the Court finds that State Farm has established Plaintiff's inability to state a negligent procurement claim against Ayres. Plaintiff cites various cases for the proposition that an insurance agent can be liable to an insured where—due to the agent's failure to exercise reasonable care and skill in procuring insurance—insurance is not procured as promised, and the insured suffers a loss. However,

Plaintiff does not explain how Ayres failed to use reasonable care in procuring earthquake insurance, nor does Plaintiff explain how she did not obtain the coverage she was promised.

Plaintiff contends that "[r]easonable care and skill do not include an agent representing a property as being free from pre-existing conditions to issue and collect premiums on a policy, only for the insurer to find the same property riddled with pre-existing damage when a claim is made a few years later." [Doc. No. 5, at 16]. But Plaintiff's supplemental discovery responses and sworn declaration do not reflect any such representation by Ayres. In her supplemental answer to an interrogatory requesting that Plaintiff "[i]dentify all communications between [Plaintiff] and [Ayres] or State Farm relating to the Earthquake Endorsement[,]" Plaintiff references three sets of e-mails, all of which occurred after Plaintiff's policy was procured and after the claimed damage had occurred [Doc. No. 1-36, at 154]. Further, the e-mails [Doc. Nos. 1-43, 1-44, 1-45] merely reflect Ayres and his staff answering a question about Plaintiff's earthquake-coverage deductible and explaining that they could not re-write Plaintiff's policy because of her claim history.

Most notably, in Plaintiff's petition, she alleges that "Ayres advised Plaintiff to obtain an earthquake endorsement, representing that State Farm would pay damages arising from an earthquake, restoring it to pre-loss condition, if such an endorsement were purchased." [Doc. No. 1-2, at ¶ 23]. However, as State Farm points out, Plaintiff later declined to adopt under oath her sole allegation of an affirmative, pre-coverage representation by Ayres. In her sworn declaration [Doc. No. 1-40], Plaintiff does not include any affirmative representations by Ayres. And Plaintiff acknowledges that her

7

contentions are "not predicated on Ayres' purported duty to ensure a pre-coverage inspection or that he procured 'illusory' coverage," both of which issues were previously decided by the state court in Ayres' favor [Doc. No. 1-32, at 2]. For these reasons, the Court finds that State Farm has established conclusively that Plaintiff is unable to establish a negligent procurement claim against Ayres.

### b.   Negligent Misrepresentation/Constructive Fraud

"Under Oklahoma law, constructive fraud [or negligent misrepresentation] consists of 'any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to [his] prejudice, or to the prejudice of any one claiming under him[.]" *McDow v. State Farm Fire & Cas. Co.*, No. CIV-22-927-F, 2022 WL 17960457, at *2 (W.D. Okla. Dec. 27, 2022) (quoting Okla. Stat. tit. 15, § 59).

Plaintiff argues that "[e]ven if Ayres alleges he was under no duty to make any representation regarding the benefits of earthquake insurance, once he chose to make those representations, he is liable for the same." [Doc. No. 5, at 13]. The problem with this argument is that Plaintiff has not pleaded facts alleging that Ayres made any such representations. As stated above, Plaintiff recently omitted from her sworn declaration her previous allegation that Ayres had "advised Plaintiff to obtain an earthquake endorsement, representing that State Farm would pay damages arising from an earthquake, restoring it to pre-loss condition, if such an endorsement were purchased." [Compare 1-2, Petition, with 1-40, Declaration]. And, given that Plaintiff did not file a reply to explain this critical

omission, the Court is left to presume that Plaintiff removed the allegation of an affirmative representation by Ayres from her sworn declaration because the allegation was false.[4]

Without an affirmative representation by Ayres, Plaintiff relies solely on Ayres' omissions. First, Plaintiff contends that Ayres did not tell Plaintiff that State Farm would deny her claim based on "differential earth movement," regardless of when the earth movement occurred, or that Plaintiff "would be required to pay over $44,010 before State Farm would pay any amount of earthquake damage." [Doc. No. 5, at 18-19]. But the earth movement exclusion is clearly reflected in Plaintiff's insurance policy, and the $44,000 is just a reference to the 5% earthquake deductible [Doc. No. 9, at 8 n.3]. Aside from acknowledging that she merely skimmed her insurance policy, Plaintiff does not explain how Ayres breached a duty owed to her by failing to explain the earth movement exclusion or deductible. *See Sutton v. David Stanley Chevrolet, Inc.*, 2020 OK 87, ¶ 14, 475 P.3d 847, 854, *as corrected* (Oct. 21, 2020) ("When dealing with alleged omissions and partial disclosures, the first question is always whether there was a duty upon the actor to disclose the whole truth.").

---

[4] Again, the Court does not decide whether Plaintiff's initial allegation of an affirmative representation by Ayres reflects actual fraud in the pleading of jurisdictional facts. However, the Court is troubled by the lack of explanation from Plaintiff as to why she recently declined to adopt under oath this critical allegation, especially considering that the issue of fraudulent joinder in the insurance/bad faith context so often turns on allegations of pre-procurement, affirmative representations by the individual agent. In her motion to remand, Plaintiff also alleged that "Ayres never informed Plaintiff that no one would conduct an inspection to determine the appropriate value of the home and potential uninsurable items." [Doc. No. 5, at 23]. However, counsel for State Farm represents that "counsel for Plaintiff acknowledged [her coverage limit] is not relevant in this case during a meet and confer." [Doc. No. 9, at 15]. Again, because Plaintiff did not file a reply in support of remand, the Court is left to presume that Plaintiff included Ayres' omission with respect to ascertaining the value of the property even though the coverage amount is not an issue in this case.

Next, Plaintiff alleges that Ayres should have told her about issues with the earthquake industry at large, like the overwhelming denial rates of earthquake claims and that "Farmers had paid $25,000,000 to the State of Oklahoma relating to earthquake insurance claims just two months prior to the issuance of Plaintiff's policy." [Doc. No. 5, at 22]. Again, Plaintiff has not cited to any authority for the proposition that an insurance agent must disclose the denial rates of certain types of claims when procuring insurance requested by the insured. The Court further agrees with State Farm that there is no basis to conclude that Ayres had a duty to disclose another insurer's settlement with the Oklahoma Attorney General when procuring a policy.

Plaintiff also contends that Ayres did not advise Plaintiff that "State Farm had been directed to perform an inspection of the property prior to inception of coverage to determine the condition of the property or that State Farm failed to do so." *Id*. However, when asked to identify this "direction," Plaintiff identified Oklahoma Insurance Department Bulletin No. PC 2015-02, which was distributed to all insurers and reflected the Oklahoma Insurance Commissioner's "expect[ation] that the insurer has inspected the property prior to inception of the coverage" if an insurer intends to deny an earthquake claim based on "pre-existing damage." [Doc. No. 1-24, at 14]. In her motion to remand, Plaintiff acknowledges that the bulletin is non-binding, but argues that it "is informative and recognizes significant issues with regard to earthquake insurance." [Doc. No. 5, at 22]. Missing from Plaintiff's motion, however, is any authority imposing on Ayres an affirmative duty to disclose the 2015 OID bulletin when procuring earthquake policies.

Plaintiff further alleges that Ayres did not inform Plaintiff of a "three strike rule," which prohibits Plaintiff from "obtaining preferred coverage from State Farm" due to the amount of insurance claims she initiated. *Id.* at 22. But Plaintiff's alleged damages in this case stem from State Farm's denial of her earthquake claim under her homeowner's policy. Had Ayres informed her that State Farm may decline to re-write insurance policies based on her claim history, it would not have changed State Farm's denial of her earthquake claim for "differential earth movement." As to these allegations of Ayres' omissions, Plaintiff has failed to connect the alleged omissions to her claimed damages.

## II.     Timeliness of Removal

Pursuant to 28 U.S.C. § 1446(b)(3), "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

State Farm asserts that it timely removed this action because it did so within 30 days of receiving Plaintiff's supplemental discovery responses (identifying only three post-procurement e-mails in response to an interrogatory asking that Plaintiff "identify all communications between [Plaintiff] and [Ayres] or State Farm relating to the Earthquake Endorsement"); and Plaintiff's sworn declaration (which omitted for the first time Plaintiff's only allegation of an affirmative representation by Ayres). The Court agrees. Plaintiff contends that State Farm should have first ascertained the removability of this case when Ayres filed his initial motion for partial summary judgment. However, at that time,

11

State Farm had no reason to believe that Plaintiff had dropped her allegation of an affirmative representation by Ayres, nor had Plaintiff yet identified the three post-procurement e-mails as all communications between her and Ayres regarding the earthquake endorsement. Here, Plaintiff's supplemental discovery responses and sworn declaration indicated for the first time that Ayres made no such affirmative, pre-procurement representations to Plaintiff pertaining to the earthquake coverage, and State Farm timely removed within 30 days of receiving the supplemental discovery responses and sworn declaration. For these reasons, the Court finds that State Farm's removal was timely under Section 1446(b)(3).

## CONCLUSION

Based on the foregoing, Plaintiff's Motion to Remand [Doc. No. 5] is **DENIED**. In light of this ruling, Plaintiff's claims against Greg Ayres are hereby **DISMISSED without prejudice** but without leave to amend.

The remaining parties shall submit a joint status report and discovery plan within 14 days of this Order.

**IT IS SO ORDERED** this 1st day of December, 2025.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge